# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 19-cr-04055-BCW-1 |
| MITCHELL JAMES KRIEG, | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Pending before the Court is defendant Mitchell James Krieg's Motion to Suppress Evidence (Motion) with supporting suggestions. (Docs. 18, 19). The Government has filed suggestions in opposition (Doc. 24), to which Defendant filed a reply and supplemental briefing. (Docs. 27, 38). The Court held a hearing on this matter on February 28, 2020. (Doc 34). The Motion is now ripe for consideration. It is recommended Defendant's Motion be denied for the following reasons.

### I.  Background

This case arises out of Defendant's alleged drug dealing from his residence. Around early 2018, Mid-Missouri Drug Task Force Lieutenant Kevin Schoenfeld received tips from three anonymous sources that Mr. Krieg was selling large amounts of methamphetamine and storing the narcotics in his home. (Tr. 4:22-5:5). One source provided directions to the home. *Id.* Lt. Schoenfeld determined the residence was located at 415 Osage County Road 501, Osage County, Missouri. (Tr. 5:8-13; 9:14-15). Lieutenant Schoenfeld testified he conducted one trash pull at the residence in January or February 2018 with no results. (Tr. 22:21-23:5).

Early in the morning on June 1, 2018, Lt. Schoenfeld again traveled to 415 Osage County Road and conducted a second trash pull. (Tr. 6:15-17). He noticed a blue trash bin in front of the residence and adjacent to the driveway, removed two white trash bags from the bin, and placed them in the back of his vehicle to search. (Tr. 6:18-19; 7:7-19). The first trash bag yielded a cigarette wrapped in cellophane that contained a green leafy substance he suspected to be

marijuana. *Id.* The first bag also held a piece of unopened mail addressed to Defendant. *Id.* The second trash bag included three Ziploc baggies that each contained a crystalline substance. *Id.* Each baggie field-tested positive for methamphetamine. *Id.* One baggie was roughly one gallon in size and the other two were each one quart in size. *Id.* The second trash bag also held a piece of notebook paper bearing Mr. Krieg's name.[1] *Id.*

On the same day, Lt. Schoenfeld applied for a state search warrant to search Mr. Krieg's residence. (Tr. 11:14-15; 12:20-22). The court issued a search warrant roughly one hour later. *Id.* The warrant was signed as "[judge's name] by Charlene Eisterhold." (Tr. 38:22-39:3); (Doc. 35, Ex. 2).

Two days later officers descended on 415 Osage County Road to execute the search warrant. (Tr. 12:23-13:6). During their approach, officers noticed a vehicle attempting to leave the residence. (Tr. 13:10-17). Officers detained the two occupants of the vehicle, one of whom was identified as Mr. Krieg. *Id.* Shortly thereafter, Lt. Schoenfeld read the search warrant to Defendant, mirandized him, and asked for his assistance locating any narcotics. (Tr. 13:21-14:6). Defendant replied, "you're going to find it anyways, I'll just show you." *Id.* Mr. Krieg then led officers to a large, multi-drawered, locked toolbox in his basement containing 57 grams of methamphetamine, over 35 grams of marijuana, over $9,000 in cash, several rounds of ammunition, and a security camera system. (Tr. 14:14-23). A glass methamphetamine bong and a cell phone were discovered on a nearby coffee table. (Tr. 16:21-17:1).

On June 8, 2018, Lt. Schoenfeld applied for and received a second state search warrant for two cell phones and a video surveillance system seized from the search of Mr. Krieg's residence. (Tr. 17:4-18:14). The warrant was again signed as "[judge's name] by Charlene Eisterhold." (Doc. 35, Ex. 7). On the same date an investigate subpoena was issued to Defendant's bank requesting all financial records related to Mr. Krieg's account. (Tr. 20:1-9). Lt. Schoenfeld later received the requested bank records. (Tr. 20:8-9). Thereafter Defendant was charged with one count of Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1).

Out of an abundance of caution the Court overruled the Government's objection to Defendant's request for a *Franks* hearing and held a hearing on February 28, 2020. (Doc. 34). The

---

[1] While Defendant argues at least some of the evidence found within the trash bags was planted, it appears uncontested the trash bags themselves belonged to Defendant. (Doc. 27, p. 5)

Government called two witnesses: Lt. Schoenfeld and retired state court clerk Charlene Eisterhold. (Tr. 62). The defense called no witnesses and offered no evidence. Lt. Schoenfeld testified that Defendant's DVR security system was encrypted and required a passcode to access. (Tr. 19:19-25). Defendant appeared to corroborate this testimony by apparently providing the DVR's passcode to the Government during the hearing. (Tr. 50:17-51:7). Moreover, Ms. Eisterhold testified she was instructed by the state judge to sign his name to both search warrants. (Tr. 38:2-16; 41:17-24). She also stated she had never signed a judge's name to any document without obtaining explicit instruction to do so by the respective judge. (43:17-20).

The Government provided email exchanges that appear to corroborate Ms. Eisterhold's testimony. On June 1, 2018—the same date Lt. Schoenfeld applied for the first search warrant—Ms. Eisterhold sent the state judge an email with an attached PDF titled "image0001.pdf." (Doc. 35, Ex. 4). The state judge replied "[s]ign my name." *Id.* On June 8, 2018—the date Lt. Schoenfeld applied for the second search warrant—Ms. Eisterhold sent the state judge an email with two attachments respectively named "Search Warrant - search of M. Kriegs Cell Phone" and "Investigative Subpoena - M Kriegs Bank Account." (Doc. 35, Ex. 9). The state judge replied "[g]o ahead and sign my name." *Id.*

Mr. Krieg now moves the Court for an order suppressing all evidence in this case, including evidence obtained from the execution of two search warrants, incriminating statements made by Defendant, and bank records subpoenaed from a third party. (Doc. 18).

## II. Discussion

Defendant essentially makes two arguments in his Motion. First, he contends the search warrant issued for his residence lacked probable cause. Second, he claims the search warrant was invalid because the state judge who issued it did not sign it himself. The Court recommends denying Defendant's Motion in its entirety for the following reasons.

**1) Probable Cause Should Support the Search Warrant.**

An affidavit establishes probable cause for a warrant if it shows "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Mohammed Ahmed Kattaria*, 553 F.3d 1171, 1175 (8th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (citations omitted)). The Court reviews the existence of probable cause based on the totality of the circumstance. *United States v. Hager*, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of

everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231); *see United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted) (explaining an affidavit's sufficiency is examined using "common sense and not a hypertechnical approach").

Furthermore, a neutral and detached judge's "decision that an affidavit establishes probable cause for a warrant" is afforded "great deference." *United States v. Stevens*, 439 F.3d 983, 988 (8th Cir. 2006) (citing *United Stated v. Leon*, 468 U.S. 897, 914 (1984)); *see Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960) (internal marks omitted) (explaining a reviewing court must "simply . . . ensure that the [issuing court] had a substantial basis for . . . concluding that probable cause existed").

Defendant argues the totality of the circumstances did not support a finding of probable cause. Specifically, Defendant claims the narcotics evidence detailed above must have been planted by another party or police due to a litany of alleged inconsistencies, including that: officers had unsuccessfully completed some type of surveillance of Defendant for six months before the second trash pull; surveillance tapes from Mr. Krieg's residence—which would apparently show who planted the evidence—have not been disclosed to Defendant; the mail bearing Defendant's name was thirty-day-old junk mail which would not have been kept for such a long period of time; the notebook paper bearing Defendant's name was written in poor handwriting and included an address not connected to Mr. Krieg; and the recovered marijuana cigarette was wrapped in cellophane for sale, and would not have been intentionally thrown away.[2]

Here, the totality of the circumstances established probable cause to support the search warrant. Over eight months, three anonymous sources stated Defendant was selling methamphetamine in his home. One gave directions to Defendant's home. Law enforcement then conducted a constitutionally proper trash pull, as the officer did not need probable cause to search Defendant's garbage.[3] *See United States v. Spotted Elk*, 548 F.3d 641, 653–54 (8th Cir. 2008) ("Police may search trash left outside the curtilage of the house to be picked up by garbage

---

[2] At the hearing Defendant conceded his illegitimate Ziploc top argument regarding planted evidence. (Tr. 51: 23-52:7). Specifically, in his Motion (and by affidavit) Defendant explained he never used Ziploc bags with red tops, which he alleged were the type of baggies found in his garbage containing meth, and instead only "ever used for any purpose" Ziplocs with green tops. (Doc. 27-1). However, pictures of narcotics recovered from Defendant's home on the date of the warrant's execution show the presence of Ziploc baggies with red, green, blue, and clear tops. (Doc. 35, Exs. 16, 18, 20, 21, 23). After viewing these pictures at the hearing, defense counsel conceded the argument that Defendant did not use the type of Ziploc baggies in which the drugs were found.

[3] Defendant does not argue the search of garbage outside his home was unconstitutional.

collectors, because the owners of the trash have abandoned it.") (citing *California v. Greenwood,* 486 U.S. 35, 40–43 (1988); *United States v. Trice,* 864 F.2d 1421, 1423–24 (8th Cir. 1988)). The dumpster diving officer discovered methamphetamine residue, marijuana, and documents bearing Defendant's name. Such evidence supported probable cause for a search warrant of Defendant's home.

Moreover, Defendant's claims of planted evidence appear unpersuasive. For one, the fact that law enforcement allegedly surveilled Defendant without witnessing criminal activity, conducted a trash pull to no avail, and then later conducted a second trash pull that yielded narcotics, does not create an implication of planted evidence. Second, at the hearing the Government explained surveillance footage seized from Defendant's home was encrypted and required a password to access. During the hearing, Mr. Krieg apparently provided the password to the Government. Defendant's claim of a bad-faith lack of disclosure is unpersuasive, particularly since this delay can be attributed to Mr. Krieg. Lastly, the Court finds Defendant's remaining arguments attempting to discredit otherwise competent evidence are too speculative to dispel the existence of probable cause.

The Court therefore recommends finding probable cause supported the search warrant. Consequently, Defendant's arrest and incriminating statements, as well as evidence recovered from his home, should be found to have been constitutionally acquired.

**2) The Court Should Find the Search Warrant Was Properly Issued.**

The legality of a search and seizure is determined by the Fourth Amendment. *United States v. Neil*, 407 F. App'x 993, 994 (8th Cir. 2011) (citing *United States v. Howard*, 532 F.3d 755, 760 (8th Cir. 2008) (explaining a violation of a state's rules of criminal procedure is usually irrelevant to "determin[e] whether evidence obtained solely by state officers is admissible in federal court") (internal marks omitted).

Under the Fourth Amendment, "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity. *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011). A search warrant must also "be issued by a neutral and detached magistrate." *United States v. Skarda*, 845 F.3d 370, 375 (8th Cir. 2016).

The Eighth Circuit has not opined on the constitutionality of a warrant bearing the signature of a judge that was physically signed by another. In a similar situation, at least two Circuits have found a search warrant lacking a judge's signature may nonetheless be constitutional. *United States v. Lyons*, 740 F.3d 702, 724 (1st Cir. 2014) ("[N]othing in the Fourth Amendment . . . conditions the validity of a warrant on it[] being signed."); *United States v. Cruz*, 774 F.3d 1278, 1286 (10th Cir. 2014) (similar); *cf. United States v. Moore*, 41 F.3d 370, 375 (8th Cir. 1994) (noting in dicta that "many court orders are oral, and some written orders may be intentionally unsigned," before ultimately finding an unintentionally unsigned wiretap warrant was a technical—as opposed to a substantive—violation under the relevant statute and therefore properly entered).

Defendant argues both search warrants issued in this case were unconstitutional because they lacked the judge's actual signature. Defendant primarily relies on state law, but also notes the slippery slope of purportedly allowing a clerk of the court to find probable cause and issue a search warrant.

Here, the Court believes both search warrants in this case were properly issued under the Fourth Amendment. Missouri statutory law does not appear relevant to the Fourth Amendment analysis at issue. *Neil*, 407 F. App'x at 994 (citing *Howard*, 532 F.3d at 760). Moreover, Defendant's primary argument concerns technical rather than constitutionally substantive issues. It is uncontested the warrants described with particularity the place to be searched and persons or things to be seized. The warrants were both supported by affidavits outlining probable cause (as noted above). On its face it similarly appears that a neutral and detached judge issued the warrant, as the signature line states the name of the judge. The accompanying text below the signature line, "by Charlene Eisterhold," merely seems to note the signature was physically generated by court staff.

Indeed, unlike the fictional runaway clerk of court portended by Defendant, Ms. Eisterhold testified at the hearing that she physically signed the judge's name to these warrants after explicit instruction from the judge. (Tr. 38:2-16; 41:17-24; 43:17-20). The Government similarly produced two emails—from June 1, 2018, and June 8, 2018, respectively—purporting to show the state judge instructing Ms. Eisterhold to sign his name to the two search warrants at issue in this case. (Doc. 35, Exs. 4, 9). It therefore seems clear the state judge issued the warrants and merely

delegated the task of physically signing both documents to court staff. The Court believes the warrants were facially valid and conclusively issued by a judge, rather than a clerk of court.[4]

In sum, the Court believes the surrogate signatory on the search warrants does not rise to a constitutional violation in the instant case. However, it would likely be prudent to avoid delegating the signing of search warrants in this manner in the future. The Court thus recommends finding the warrants were properly issued and denying the Motion in its entirety.[5]

### III.     Conclusion

For the reasons stated above, the Court concludes that Mr. Krieg's contentions regarding suppression of evidence in this case are without merit, and his Motion should be denied.

Accordingly, IT IS THEREFORE RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING defendant Mitchell James Krieg's Motion to Suppress Evidence. (Doc. 18).

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 6th day of March, 2020, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*
Willie J. Epps, Jr.
United States Magistrate Judge

---

[4] The Court notes that even if the search warrants were facially deficient, it appears this case would fall within the good-faith exception to the exclusionary rule. *Leon*, 468 U.S. at 923; *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013). Specifically, the Court believes an officer could "reasonably presume" both warrants "to be valid" based on the language contained in the warrant and affidavit, as well as on the signature line. *Leon*, 468 U.S. at 923 (internal marks and citations omitted) (stating the good-faith exception does not apply in part where "a warrant may be so facially deficient–i.e., in failing to particularize the place to be searched or the things to be seized–that the executing officers cannot reasonably presume it to be valid").

[5] Defendant also cursorily argues his bank records were improperly obtained by subpoena. However, Mr. Krieg has no expectation of privacy in financial records voluntarily shared to a third party—here, his bank—under the Fourth Amendment. *United States v. Miller*, 425 U.S. 435, 446 (1976).